IN THE COMMONWEALTH COURT OF PENNSYLVANIA

LaRussa’s Italian Café, LLC, :
 Appellant :
 :
 v. : No. 778 C.D. 2017
 : Argued: April 12, 2018
Commonwealth of Pennsylvania, :
Pennsylvania Liquor Control Board :

BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
 HONORABLE ELLEN CEISLER, Judge
 HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER FILED: May 8, 2018

 LaRussa’s Italian Café, LLC (Licensee) appeals from an Order of the Court
of Common Pleas of Lackawanna County (trial court), dated May 3, 2017, denying
Licensee’s appeal and affirming an Order of the Pennsylvania Liquor Control Board
(Board), which refused to renew Licensee’s Restaurant Liquor License No. R-
15389. Licensee contends that it was deprived of due process because the Board’s
Bureau of Licensing (Bureau) refused to act on Licensee’s application to replace its
Board-approved manager1 prior to the Board adjudicating Licensee’s application to

 1
 Section 23.1 of Title 37 of the Pennsylvania Administrative Code, 37 Pa. Code § 23.1,
defines a board-approved manager as “[a] person appointed or designated by the licensee and
renew its liquor license. Licensee also contends that substantial evidence does not
support the trial court’s determination that Licensee failed to take timely substantial
remedial measures, and, therefore, its application to renew its liquor license should
have been granted. After review, we affirm.

I. Background
 A. Licensee’s Application to Renew its Liquor License
 Licensee operates a restaurant, commonly known as the Clock Tower, located
at 590 Burke Bypass, Olyphant, Lackawanna County, Pennsylvania (the property),
and was the holder of Restaurant Liquor License No. R-15389. On or about June
28, 2015, Licensee filed an application to renew its liquor license for the period
beginning October 1, 2015, and ending September 30, 2017. Ashley Walsh (Walsh)
filed the renewal application on behalf of Licensee. Section 11 of the renewal
application asked Licensee to “[l]ist all felony and misdemeanor convictions of the
licensee, co-licensee, members, new and current officers, directors . . . employees
and the manager occurring since the last notice of change of officers or application
was filed.” (Reproduced Record (R.R.) at 2a.) Licensee responded that there were
“[n]o such convictions.” (Id.)

 B. Guilty Plea of Licensee’s Board-Approved Manager
 However, on February 10, 2014, David Klem (Mr. Klem), Licensee’s Board-
approved manager, pleaded guilty in the Court of Common Pleas of Lackawanna

approved by the [Board] under 40 Pa. Code § 5.16, § 5.17 or [§] 5.23 (relating to appointment of
managers, distributor or importing distributor licensees: appointment of manager; and appointment
of managers).”

 2
County (common pleas), to violating Section 911(b)(3) of the Crimes Code, 18 Pa.
C.S. § 911(b)(3) (corrupt organizations), and Section 13(a)(30) of The Controlled
Substance, Drug, Device and Cosmetic Act (Drug Act), 35 P.S. § 780-113(a)(30)2
(manufacture, delivery, or possession with intent to manufacture or deliver, a
controlled substance (PWID)). During Mr. Klem’s plea colloquy, the assistant
district attorney described the facts as follows:

 [B]etween January 7, 2007, and October 23, 2012, the defendant,
 David P. Klem, headed up an organization . . . that imported cocaine
 from Philadelphia into Lackawanna County into the Olyphant area.
 That during that period of time he imported a large amount of cocaine
 in the amount of a kilo . . . [and] distributed cocaine. It was a structured
 organization. There were many other individuals in it . . . Eric Gruzesky
 . . . and during that time he had stored the cocaine . . . primarily . . .
 inside Larussa’s Clock Tower Restaurant [and] distributed the cocaine
 out of that location as well as other locations at times.

(R.R. at 46a-47a.) Common pleas asked Mr. Klem if, after hearing that description
of the facts, he agreed it was true and accurate and if he accepted responsibility for
his conduct. (Id. at 47a.) Mr. Klem responded in the affirmative. On May 28, 2014,
Mr. Klem was sentenced to concurrent terms of imprisonment of 16 to 48 months
on the conviction for corrupt organizations and 30 to 72 months on the conviction
for PWID.3 (Id. at 40a.)

 2
 Act of April 14, 1972, P.L. 233, as amended.
 3
 On May 16, 2014, Mr. Klem, represented by new counsel, moved to withdraw his guilty
plea on the basis that he was misinformed as to his prior record score for purposes of sentencing,
and that, in fact, he was not guilty. Following a hearing, common pleas denied the motion. (R.R.
at 387a.) On that same date, Mr. Klem was sentenced. During sentencing, when asked to give a
statement, Mr. Klem stated, among other things, “I have not sold drugs since 2009,” and, “[o]nce
I found out about the investigation I clear-cut and stopped everything that I’ve done.” (Id. at 399a.)

 3
 In addition, on February 13, 2015, following the Commonwealth’s filing of a
forfeiture petition and a lis pendens on the property, which is owned by Mr. Klem
and his mother Elaine Klem (Ms. Klem), the parties stipulated that the
Commonwealth would accept $10,000 in satisfaction of its claim and withdraw the
lis pendens.4

 C. Objections to Licensee’s Renewal Application
 On September 16, 2015, the Bureau objected to the renewal of Licensee’s
liquor license, informing Licensee that a preliminary review of its history of
operation and/or citation record may indicate an abuse of the licensing privilege.
Licensee was informed that a hearing would be held to determine whether Licensee
had engaged in egregious activity warranting non-renewal of Licensee’s liquor
license, citing two violations of the Liquor Code5 (first objection), Mr. Klem’s
conviction for corrupt organizations (third objection), Mr. Klem’s conviction for
PWID (fourth objection), and Mr. Klem’s ill repute based on his convictions (fifth
and sixth objections).6
 Sometime in October 2015, Licensee submitted an application for the
replacement of Mr. Klem with Ms. Klem as its Board-approved manager (the
application to replace Mr. Klem). (Board Opinion (Op.), Findings of Fact (FOF)
¶ 19, July 27, 2016; Hr’g Tr., Jan. 20, 2016, at 31, R.R. at 202a.)

 4
 Mr. Klem, Ms. Klem, Stephen Klem, and Walsh filed a petition for return of property,
which they withdrew pursuant to the stipulation.
 5
 Act of April 12, 1951, P.L. 90, as amended, 47 P.S. §§1-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.
 6
 The Bureau’s objections are reorganized numerically to reflect how they appeared in the
Bureau’s amended objection letter of December 30, 2015, and before the Board.

 4
 On December 30, 2015, the Bureau amended its objection letter, adding that
Licensee had abused its licensing privilege in violating the laws of the
Commonwealth by, from June 2007 to the present, conducting drug activity on and
originating from the licensed premises (second objection).7

 D. Administrative Hearing
 On January 20, 2016, a hearing was held before a hearing examiner. At the
outset, Licensee’s Counsel noted that Licensee had filed the application to replace
Mr. Klem, and that if the Board would simply approve that application, many of the
Board’s objections would “go away.” (Hr’g Tr., Jan. 20, 2016, at 5, R.R. at 176a.)
Counsel objected “to having to be here today” and suggested that the Board approve
the application to replace Mr. Klem and let Licensee operate its business. (Id.) The
hearing examiner overruled Licensee’s objection.
 Walsh testified that she is Mr. Klem’s girlfriend, they have two children and
live together. She became the sole member of Licensee and, thus, the owner of the
license on May 16, 2011. Walsh explained that in 2011, Mr. Klem’s father had
become sick and wanted to transfer things into Mr. Klem’s name, so, “for liability
reasons,” because Walsh does not own anything, she became the sole member of
Licensee. (Hr’g Tr., Jan. 20, 2016, at 24, R.R. at 195a.) Prior to that time, beginning
around 2009, Walsh worked at the restaurant, “side by side” with Mr. Klem. (Hr’g
Tr., Jan. 20, 2016, at 33, R.R. at 204a.) However, she denied knowing that Mr. Klem
was engaged in distributing controlled substances. The restaurant, Walsh noted, had
closed in December 2013 for lack of business. It was not until July 2014 that Walsh

 7
 The Board’s amended objection letter mistakenly referred to Licensee’s “amusement
permit.” (R.R. at 11a.)

 5
submitted the license to the Board for “safekeeping,” not realizing that she was
obligated to do so until that time.8 (Hr’g Tr., Jan. 20, 2016, at 34-35, R.R. at 205a-
06a.) The restaurant reopened a day before the administrative hearing. It operates
from 4:30 p.m. until 10:00 or 11:00 p.m. Since Mr. Klem’s release from prison on
July 13, 2015, he had been helping at the restaurant with repairs, cleaning, and
painting. Going forward, Walsh anticipated that Mr. Klem would act as her
“consultant,” showing employees what to do, preparing the food, and making
deliveries. (Hr’g Tr., Jan. 20, 2016, at 34, R.R. at 205a.) Walsh would buy all
alcoholic beverages for Licensee. Mr. Klem would not receive compensation for his
work, although, Walsh acknowledged, Mr. Klem would benefit indirectly since
Walsh and Mr. Klem live together and she would be paid if the restaurant turned a
profit. Walsh, who works as a sterile technician at Regional Hospital of Scranton,
noted that she works Monday through Thursday and every other Sunday from 8:30
a.m. to 2:30 p.m., and does not arrive at the restaurant until 4:00 p.m. In Walsh’s
absence, either Ms. Klem or Mr. Klem would supervise the restaurant’s employees.
Walsh stated that around November 2015, Licensee filed the application to replace
Mr. Klem. (Hr’g Tr., Jan. 20, 2016, at 44-45, R.R. at 215a-16a.) Walsh was
confident that Mr. Klem was now not engaged in distributing drugs. In fact, Walsh
denied that Mr. Klem was ever involved in distributing drugs.9 She stated that Mr.
Klem only pleaded guilty because he had received a good plea deal, he had recently

 8
 Section 4-474.1(a) of the Liquor Code, Act of April 12, 1951, P.L 90, added by Section
21 of the Act of December 9, 2002, as amended, 47 P.S. § 4-474.1(a), provides that “[a] restaurant
. . . whose licensed establishment is not in operation for fifteen consecutive days shall return its
license for safekeeping with the board no later than at the expiration of the fifteen-day period.”
 9
 Walsh testified that Licensee suspected its prior chef of taking pills while working, and
Licensee fired him in October 2012. (Hr’g Tr., Jan. 20, 2016, at 50, 53, R.R. at 221a, 224a.) The
prior chef was allegedly involved in distributing cocaine from the property. (R.R. at 29a, 47a,
265a.)

 6
learned that Walsh was pregnant with their second child, his father was sick, and he
was afraid of receiving a long prison term if he went to trial and was convicted.
 Ms. Klem testified that she applied to be the Board-approved manager for
Licensee. Following the submission of the application to replace Mr. Klem, a Board
investigator came to Ms. Klem’s home and stated that the application would be
approved. (Hr’g Tr., Jan. 20, 2016, at 67-68, R.R. at 238a-39a.) The Board
investigator added, according to Ms. Klem, that in about 30 days Licensee would
receive a response about getting the license out of safekeeping. Ms. Klem stated
that she would work about 20 to 25 hours a week at the restaurant, from 4:30 p.m.
until 10:00 p.m., noting that the restaurant is closed on Sunday and Monday. If Ms.
Klem was not at the restaurant, she testified, then Walsh would be in charge. Ms.
Klem noted that Mr. Klem had hired the restaurant’s employees, and, if the renewal
application was granted, Mr. Klem would continue working at the restaurant,
including hiring and directing employees.
 Regarding ownership of the property, Ms. Klem testified that there is a
mortgage on the property naming her and her husband as mortgagees, but that she
and Mr. Klem have owned the property since they first purchased it in 2005. When
Licensee pays rent – about $1,000, although the amount varies depending on the
restaurant’s performance – payment is made to Ms. Klem and her husband.10 Ms.
Klem agreed that Mr. Klem would have access to the property, including doing odd
jobs as testified to by Walsh, if the renewal application was granted. Ms. Klem
denied knowing of any illegal activity occurring at the property between 2007 and
2012.

 10
 While the restaurant was closed, Mr. Klem and Ms. Klem did not accept rent from
Licensee.

 7
 Mr. Klem testified that he never sold drugs out of the restaurant, that he did
not have drugs delivered in pizza boxes from the restaurant, and that he never stored
cocaine at the restaurant. Mr. Klem explained that when he accepted the plea offer,
he let his family decide for him, noting that Walsh was pregnant, the plea offer was
favorable, his father had cancer, he was facing a lengthy sentence if he was convicted
after trial, and he was concerned that any jury picked would be biased because he
lived in a small area and the case was publicized. Thus, Mr. Klem stated on cross
examination, he lied when he pleaded guilty. (Hr’g Tr., Jan. 20, 2016, at 85, R.R. at
256a.) Regarding his duties at the restaurant, Mr. Klem stated that he is “basically
consulting” so as to help the restaurant get “off the ground,” and that he works for
another restaurant. (Hr’g Tr., Jan. 20, 2016, at 100-01, R.R. at 271a-72a.)
 Entered into evidence at the hearing, inter alia, was Licensee’s citation
history, noting violations for using a loudspeaker that amplified sound beyond
Licensee’s property line and for having eight bottles of liquor contaminated with
fruit flies. (R.R. at 64a, 68a.)
 The hearing examiner issued a 58-page opinion recommending that
Licensee’s renewal application be denied. The Board issued its opinion, dated July
27, 2016, agreeing with the hearing examiner. (Board Op., July 27, 2016, at 27.)
The Board concluded that the evidence presented at the administrative hearing
showed that the objections of the Bureau were warranted, and it would be contrary
to the public interest to renew Licensee’s license. (Id. at 19.) Regarding objections
two, three, and four, Mr. Klem admitted, by pleading guilty, “to engaging in a
criminal enterprise involving the distribution of large quantities of cocaine using the
licensed establishment for storage and delivery.” (Id. at 20.) These facts were
“extremely troubling.” (Id.) Upon Mr. Klem’s release from prison, he “returned to

 8
having a significant role at the licensed premises.” (Id. at 23.) As Walsh, Mr. Klem,
and Ms. Klem all testified, “Mr. Klem would continue to be actively involved in
Licensee’s operations.” (Id. at 24.) Despite the fact that Licensee’s Board-approved
manager, as well as other short-term employees, were distributing and storing
cocaine on the property, Licensee offered no evidence of corrective measures other
than terminating its former chef for taking pills while working. (Id.) In fact, the
Board noted, Mr. Klem, Ms. Klem, and Walsh all denied that Mr. Klem was involved
with distributing drugs, and this was so even though Mr. Klem had pleaded guilty.
The Board stated, “[t]he failure by Licensee to address the criminal activity which
took place at the [property] by Mr. Klem is extremely troubling, and his continued
involvement in Licensee’s operations is unacceptable.” (Id.) Therefore, the Board
found that Mr. Klem’s crimes were a clear abuse of the licensing privilege, and,
given Licensee’s failure to institute remedial measures, the Bureau’s second, third,
and fourth objections clearly warranted non-renewal of Licensee’s license. (Id. at
24-25.)
 As for the first objection, the Board found that while the primary basis for its
decision was Mr. Klem’s criminal convictions, Licensee’s citation history was an
“additional factor weighing against renewal.” (Id. at 20.)
 Regarding the fifth and sixth objections, given Mr. Klem’s two felony
convictions, he is no longer a reputable person, the Board concluded. (Id. at 26.)
Further, given Licensee’s “substantial involvement of a person of ill repute, the
Board simply has no confidence in Licensee’s fitness to be entrusted with the
licensing privilege.” (Id.)
 Accordingly, the Board refused to renew Licensee’s license effective October
1, 2015. (Board Op., July 27, 2016, Conclusions of Law ¶ 9.)

 9
 E. De Novo Hearing
 Licensee then appealed to the trial court, which held a de novo hearing.
Licensee again presented testimony from Walsh and Mr. Klem.
 At the conclusion of the hearing, Licensee’s Counsel argued that if the Board
would act on Licensee’s application to replace Mr. Klem, then “we wouldn’t be here
today.” (Hr’g Tr., Dec. 15, 2016, at 96, R.R. at 165a.) Counsel noted that four of
the Board’s six objections had to do with Mr. Klem being the manager, but Mr. Klem
wanted to be removed as the manager. Counsel also pointed out that Licensee was
subject to citation if Mr. Klem, as the Board-approved manager, was not at the
property, and, yet, at the same time, the Board did not want him at the property at
all. Counsel asserted that the Board was “holding the application [to replace Mr.
Klem] hostage.” (Hr’g Tr., Dec. 15, 2016, at 97, R.R. at 166a.)
 The Board’s Counsel responded that the Board first had to act on whether
Licensee’s license should be renewed because, if the license is not renewed, then
there would not be a need to approve a new manager. Licensee’s application to
replace Mr. Klem was a “last minute pass,” but the substitution does not negate the
fact that there was drug activity occurring at the property for several years “[a]nd
that’s a problem . . . for the license[e] itself.” (Hr’g Tr., Dec. 15, 2016, at 97-98,
R.R. at 166a-67a.) It was “not as simple [as] just approve that application [to replace
Mr. Klem] and it goes away. No, that would not resolve it at all[,]” Board’s Counsel
added. (Hr’g Tr., Dec. 15, 2016, at 99, R.R. at 168a.)
 Subsequently, the trial court issued an opinion and order sustaining the
Board’s denial of Licensee’s renewal application. (Trial Ct. Op. at 8.) The trial
court concluded that while Licensee’s citation history was minimal in severity and

 10
not likely to support a denial of Licensee’s renewal application, it was Mr. Klem’s
“criminal activity coupled with the lack of timely remedial measures, which is
troubling, persuasive, and controlling.” (Id.) The trial court highlighted that, by Mr.
Klem’s own admission, his “criminal activity was not only pervasive in size but also
in time.” (Id.) Although, the trial court noted, Mr. Klem now asserted his innocence,
he admitted his guilt during his guilty plea, in a written plea colloquy and when he
forfeited $10,000. (Id. at 8-10.) Specifically, the trial court recounted, Mr. Klem
admitted that for over five years, he headed an organization that imported large
amounts of cocaine from Philadelphia to be distributed in Lackawanna County. (Id.
at 8.) Mr. Klem also admitted that he used the property to store and distribute
cocaine. (Id. at 8-9.) The trial court found “it difficult to believe that the Licensee
did not know of this activity.” (Id. at 9.) At the very least, the trial court stated,
Licensee should have known of the drug activity at the property and taken measures
either to prevent or abate it. (Id.) However, even now, Licensee has not taken
substantial remedial measures. (Id.) Mr. Klem, the trial court noted, is still acting
as a manager of the restaurant, albeit in a limited role. (Id.) Licensee should have
taken remedial measures at the time it knew or should have known of the drug
activity at the property. (Id.) Summing up, the trial court stated that “the credible
evidence in this case supports the Board’s Refusal based on [Section 470(a.1) of the
Liquor Code,] 47 P.S. § 4-470(a.1)(1),[11] regarding Mr. Klem’s violation of the ‘laws
of this Commonwealth.’” (Id.)
 Moreover, the trial court continued, given Mr. Klem’s criminal convictions,
he is not a person of good reputation. (Id.) The trial court rejected Mr. Klem’s

 11
 Added by Section 17 of the Act of December 21, 1998, P.L. 1202.

 11
contention that he was, in fact, innocent, given his guilty plea and his forfeiture of
$10,000. (Id. at 10.)

II. Discussion
 A. Due Process/Bias
 On appeal,12 Licensee argues that the Bureau manipulated the administrative
process, resulting in the denial of due process, when it objected to Licensee’s
renewal application and then delayed in acting on Licensee’s application to replace
Mr. Klem, which would have eliminated four of the Bureau’s six objections.13 In
other words, Licensee argues that this “commingling of functions” by the Bureau, in
not acting on the application to replace Mr. Klem while instituting the adjudicatory
process against Licensee, potentially results in bias and suggests non-objectivity.
(Licensee’s Brief (Br.) at 13.) Licensee adds that a de novo hearing before the trial
court does not remove the taint because the trial court did not have the authority to
approve or deny Licensee’s application to replace Mr. Klem.
 The Board responds that Licensee’s argument is waived. In any event, even
if not waived, Licensee’s argument lacks merit. There is no commingling of
functions, the Board contends. The Bureau acts as the prosecutor at license renewal
hearings, while the Board acts as an adjudicator. Nor was there any bias. The Board
highlights that the Bureau’s objections to Licensee’s renewal application were first

 12
 Our standard of review in a liquor license renewal case is limited to determining whether
the trial court’s findings of fact are supported by substantial evidence, whether the trial court
committed an error of law, or whether the trial court abused its discretion. In re License Renewal
Application of the Quippan Club, 806 A.2d 491, 493 n.4 (Pa. Cmwlth. 2002).
 13
 Our review suggests that it is ultimately the Board that decides whether to approve a
licensee’s application to appoint a new manager; however, Licensee continually refers to the
Bureau. It appears that Licensee’s position is that the Bureau delayed in moving Licensee’s
application to replace Mr. Klem along to the Board.

 12
filed on September 16, 2015, and it was only thereafter, in either October or
November of 2015, that Licensee filed the application to replace Mr. Klem. By then,
Licensee’s license had expired, and, thus, “there was nothing for [the Bureau] to
process.” (Board’s Br. at 12.) In any case, the Board cannot ignore Licensee’s prior
violations of the Liquor Code simply because Licensee offered to change its
manager. Moreover, Licensee was able to present evidence of the application to
replace Mr. Klem at the administrative hearing, as well as at the de novo hearing
before the trial court, which satisfied Licensee’s due process rights.
 In reply, Licensee argues that it did not waive this issue because Licensee
raised the issue, in testimony and in argument, both at the administrative hearing and
the de novo hearing.
 Initially, contrary to the Board’s contention, Licensee’s argument is not
waived. Licensee raised this issue during both the administrative hearing and the de
novo hearing. (Hr’g Tr., Jan. 20, 2016, at 5, R.R. at 176a; Hr’g Tr., Dec. 15, 2016,
at 96-97, R.R. at 165a-66a.)
 Nevertheless, Licensee’s argument lacks merit. Although not cited by either
party in their briefs, Section 5.23(e) of Title 40 of the Pennsylvania Administrative
Code, 40 Pa. Code § 5.23(e), provides that the “[a]ppointment or approval, or both,
by the Board of a manager will not exempt the licensee from the penalties provided
by law and this title for violations committed in the licensed establishment or in the
course of the operation of the licensed business.”14 Thus, just as the Board argued
during the de novo hearing, even if the Board approved Licensee’s application to
replace Mr. Klem, such did not necessarily warrant granting Licensee’s renewal
application. Licensee was still subject to the non-renewal of its license based on Mr.

 14
 Although the Board did not cite to 40 Pa. Code § 5.23(e), it advanced this same argument
during the de novo hearing.

 13
Klem’s violation of the laws of this Commonwealth. Stated another way, contrary
to Licensee’s contention, had the Board approved Licensee’s application to replace
Mr. Klem, it would not have necessarily “remove[d] the objectionable situation
supporting the refusal to renew the license.” (Licensee’s Br. at 10.) Therefore,
contrary to Licensee’s contention, the fact that the Bureau refrained from acting on
the application to replace Mr. Klem does not suggest bias, potentially reflect non-
objectivity, or constitute a due process violation.15

 B. Non-Renewal
 Licensee contends that it did take substantial corrective measures so that its
license should have been renewed. Walsh testified that she was unaware of Mr.
Klem’s illegal activities, and this is supported by the fact that the investigation of
Mr. Klem did not involve any search warrants, wires, interviews of Mr. Klem, or his
appearance before a grand jury. Notably, the hearing examiner found that Walsh
was credible when she testified that she did not know of Mr. Klem’s drug activity,

 15
 Licensee recognizes that the alleged “impermissible mixing of roles” is “not the same
type as in Lyness [v. State Bd. of Medicine, 605 A.2d 1204 (Pa. 1992),]” (Licensee’s Br. at 9), the
case it primarily relies upon, but offers it as an analogy because the Bureau here both objected to
the renewal of Licensee’s license and did not act on Licensee’s application to replace Mr. Klem.
In Lyness, three members of the State Board of Medicine voted both to institute formal proceedings
against the appellant and, following a hearing, to permanently revoke the appellant’s medical
license. Id. at 1206. Our Supreme Court held that this “commingling [of] prosecutorial and
adjudicatory functions[,]” “where the very entity or individuals involved in the decision to
prosecute are ‘significantly involved’ in the adjudicatory phase of the proceedings,” constitutes a
due process violation. Id. at 1207, 1210. What is permissible, however, “is that if more than one
function is reposed in a single administrative entity, walls of division be constructed which
eliminate the threat or appearance of bias.” Id. at 1209. As Licensee recognizes, Lyness is
distinguishable, as there is no suggestion in the record that members of the Bureau, which acts as
the prosecutor, 47 P.S. § 4-470(a.1), were also members of the Board, which acts as an adjudicator,
Section 464 of the Liquor Code, 47 P.S. § 4-464. Moreover, as we have held, even if Licensee’s
application to replace Mr. Klem had been granted, this would not have “remove[d] the
objectionable situation.” (Licensee’s Br. at 10.)

 14
although the Board did not adopt this finding. When Walsh did become aware of
the charges against Mr. Klem and his plea, she attempted to remove him as manager
before the restaurant resumed operation by submitting the application to replace Mr.
Klem. This was a corrective measure to address the underlying issue, but the Bureau
never acted on it.
 The Board responds that Licensee’s claims that it did not know about Mr.
Klem’s illegal activities and that once Walsh learned about them she tried to remove
him are contradicted by the record evidence. Walsh and Mr. Klem are in a
relationship, live together, and have two children, the Board notes. Mr. Klem
pleaded guilty on February 10, 2014, and was sentenced to state prison on May 28,
2014; yet Walsh did not act to have him removed as the Board-approved manager
until about October 2015. Moreover, Walsh tried to hide this from the Board by
indicating on Licensee’s renewal application that none of its employees or its
manager had a felony or misdemeanor conviction. The fact is, the Board asserts,
that Mr. Klem sold and trafficked narcotics out of the property while acting as
Licensee’s manager. Walsh and Licensee were well aware of not only Mr. Klem’s
felonious conduct but also that of Licensee’s employees, but Licensee took no action
to remedy this malfeasance until after the Board objected to the renewal of
Licensee’s license. Therefore, the Board submits, there is no basis for disturbing the
trial court’s determination.
 Under the Liquor Code, “the renewal of a liquor license is not automatic.”
Jim Jay Enters., Inc. v. Pa. Liquor Control Bd., 91 A.3d 274, 283 (Pa. Cmwlth.
2014). The Board, under Section 470(a.1) of the Liquor Code, may refuse to renew
a liquor license for several reasons.16 When a party appeals a Board decision, the

 16
 Specifically, Section 470(a.1) of Liquor Code provides as follows:

 15
trial court, pursuant to Section 464 of the Liquor Code, 47 P.S. § 4-464, makes its
own findings of fact and conclusions of law.17 The trial court is required to “receive

 (a.1) The Director of the Bureau of Licensing may object to and the board may
 refuse a properly filed license application:

 (1) if the licensee, its shareholders, directors, officers, association members,
 servants, agents or employes have violated any of the laws of this
 Commonwealth or any of the regulations of the board;

 (2) if the licensee, its shareholders, directors, officers, association members,
 servants, agents or employes have one or more adjudicated citations under this
 or any other license issued by the board or were involved in a license whose
 renewal was objected to by the Bureau of Licensing under this section;

 (3) if the licensed premises no longer meets the requirements of this act or the
 board’s regulations; or

 (4) due to the manner in which this or another licensed premises was operated
 while the licensee, its shareholders, directors, officers, association members,
 servants, agents or employes were involved with that license. When
 considering the manner in which this or another licensed premises was being
 operated, the board may consider activity that occurred on or about the licensed
 premises or in areas under the licensee’s control if the activity occurred when
 the premises was open for operation and if there was a relationship between the
 activity outside the premises and the manner in which the licensed premises
 was operated. The board may take into consideration whether any substantial
 steps were taken to address the activity occurring on or about the premises.

47 P.S. § 4-470(a.1).
 17
 Section 464 of the Liquor Code provides, in relevant part, as follows:

 The court shall hear the application de novo on questions of fact, administrative
 discretion and such other matters as are involved, at such time as it shall fix, of
 which notice shall be given to the board. The court shall either sustain or over-rule
 the action of the board and either order or deny the issuance of a new license or the
 renewal or transfer of the license or the renewal of an amusement permit to the
 applicant.

 16
the record of the proceedings before the Board, if it is offered, and is permitted to
take new evidence. Even if the trial court does not make findings of fact that are
materially different from those found by the [Board], it may reach a different
conclusion.” Jim Jay Enters., Inc., 91 A.3d at 283. In a de novo hearing, the trial
court, as the trier of fact, is permitted to sustain, alter, change, modify, or amend the
Board’s decision. Id. at 284.
 “When there are violations of the law unrelated to the [Liquor] Code, the
[Board] may refuse to renew a license where a licensee (1) knows or should have
known of ongoing criminal activities; and (2) . . . failed to take substantial
affirmative steps to prevent such activities.” Id. (internal quotation marks omitted).
Both parts of this test must be satisfied in order for it to form the basis for refusing
to renew a liquor license. Id. “In determining whether to renew a license on appeal,
the trial court is permitted to consider substantial steps taken by a licensee to
remediate the violations.” Id. However, “[r]emedial measures must be taken at a
time when the licensed establishment knew or should have known that illicit activity
was occurring on the premises.” Id.
 Regarding the first part of the test, it does not appear that Licensee challenges
the trial court’s findings that Licensee, via Walsh, knew or, at least should have
known, of Mr. Klem’s drug activity at the property. To the extent Licensee’s brief
can be construed as, in fact, raising such a challenge, substantial evidence18 supports
the trial court’s findings. There is substantial evidence in the record, particularly
Mr. Klem’s own admission during the plea colloquy, that he imported large amounts

47 P.S. § 4-464.
 18
 “Substantial evidence is relevant evidence that a reasonable mind might consider
adequate to support a conclusion.” First Ward Republican Club of Phila. v. Pa. Liquor Control
Bd., 11 A.3d 38, 43 n.9 (Pa. Cmwlth. 2010).

 17
of cocaine from Philadelphia and then used the property to store and distribute that
cocaine. Walsh knew, or at least should have known, of Mr. Klem’s drug activity at
the property given the extensive drug activity occurring at the property over a 5-year
period, Walsh worked at the restaurant “side by side” with Mr. Klem beginning
around 2009, and then in 2011 became Licensee’s sole member, and Walsh is Mr.
Klem’s long-time girlfriend, they live together, and have two children together.19
(Hr’g Tr., Jan. 20, 2016, at 33, R.R. at 204a); see Pa. Liquor Control Bd. v. Can,
Inc., 664 A.2d 695, 699 (Pa. Cmwlth. 1995) (concluding that the record amply
supported Board’s determination that corporate owner of bar should have known of
pervasive drug activity occurring at the bar because he was often present there),
petition for allowance of appeal granted in part, 671 A.2d 1135 (Pa. 1996), appeal
withdrawn.
 As for the second part of the test, once again substantial evidence supports the
trial court’s determination that Licensee did not take timely substantial remedial
measures. Notably, as the Board highlights, even on Licensee’s renewal application,
it made no mention that its Board-approved manager had two felony convictions. It
was not until the Bureau, in response to Licensee’s renewal application, objected
and pointed out that Mr. Klem had two felony convictions that Licensee filed the
application to replace Mr. Klem. This was 20 months after Mr. Klem first pleaded
guilty. Even now, Mr. Klem is still involved in the management of the restaurant
and will have some role with the restaurant going forward.

 19
 Licensee contends that the hearing examiner found that Walsh was credible when she
testified that she did not know of Mr. Klem’s drug activity. Even if the hearing examiner’s
proposed finding of fact No. 30 could be read in this way, as opposed to merely recounting her
testimony, the Board did not adopt this finding of fact, which even Licensee concedes. 47 P.S.
§ 4-464 (stating that the hearing examiner shall make a “recommendation”).

 18
 Accordingly, we see no basis for disturbing the trial court’s determination
denying Licensee’s renewal application, and, therefore, we affirm.20

 _____________________________________
 RENÉE COHN JUBELIRER, Judge

 20
 In light of our determination, we need not address the other bases for denying Licensee’s
renewal application.

 19
 IN THE COMMONWEALTH COURT OF PENNSYLVANIA

LaRussa’s Italian Café, LLC, :
 Appellant :
 :
 v. : No. 778 C.D. 2017
 :
Commonwealth of Pennsylvania, :
Pennsylvania Liquor Control Board :

 ORDER

 NOW, May 8, 2018, the Order of the Court of Common Pleas of Lackawanna
County, dated May 3, 2017, is AFFIRMED.

 _____________________________________
 RENÉE COHN JUBELIRER, Judge